DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

|  |  |  |
|---|---|---|
| CHESTER E. CROMWELL, | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil No. 2007-141 |
| INTERNATIONAL UNION, THE UNITED STEELWORKERS, AFL-CIO-CLC, Local 8713, | ) ) ) ) |  |
| Defendants. | ) ) ) |  |

ATTORNEYS:

**Bernard M. Vansluytman, Esq.**
St. Thomas, U.S.V.I.
    *For the plaintiff.*

**Michael J. Sanford, Esq.**
St. Croix, U.S.V.I.
    *For the defendants.*

## <u>MEMORANDUM OPINION & ORDER</u>

Before the Court is the motion by the defendants, United Steelworkers of America, AFL-CIO-CLC ("USW") and United Steelworkers of America Local Union No. 8713 ("Local 8713") (together, the "Union") for summary judgment in this matter.

## I. <u>FACTUAL AND PROCEDURAL HISTORY</u>

Chester Cromwell ("Cromwell") is a resident of St. Thomas, U.S. Virgin Islands.  The Union is the collective bargaining agent for union employees of the Virgin Islands Telephone Corporation d/b/a Innovative Telephone ("Innovative"), a Virgin

*Cromwell v. Int'l Union et al.*
Civil No. 2007-141
Memorandum Opinion & Order
Page 2

Islands public utility.  At all times relevant, Cromwell was an Innovative employee, and was a member in good standing of the Union.

On August 11, 2005, Cromwell was suspended for two days for insubordination as a result of his refusal to tuck his shirt in while on the job.  Five days later, he returned to work and continued to refuse to tuck in his shirt.  As a result, he was suspended on August 17, 2005, for an additional three days for insubordination.

On August 25, 2005, the defendants filed a grievance on behalf of Cromwell, asserting that Cromwell's suspensions for failing to tuck in his shirt (the "August suspensions") were without just cause and in violation of the CBA.

On January 3, 2006, Cromwell was suspended for ten more days pending an investigation of alleged insubordination in December 2005.

On January 13, 2006, a suspension hearing was held related to the January 3, 2006 suspension.  At the conclusion of that hearing, Innovative sustained his January 3, 2006, suspension.

On January 31, 2006, the Union informed Cromwell that it would not take his suspension pending investigation grievance to arbitration.

On May 2, 2006, a hearing was held related to the August

*Cromwell v. Int'l Union et al.*
Civil No. 2007-141
Memorandum Opinion & Order
Page 3

2005 suspensions.

In September 2007, Cromwell commenced this lawsuit in the Superior Court of the Virgin Islands, alleging a breach of the CBA. In November 2007, the Union removed this lawsuit to this Court.

On May 14, 2009, the defendants filed a motion to dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(6). On August 24, 2009, the Court granted the defendants motion to dismiss.  The Court gave Cromwell an opportunity to amend his complaint.

On August 24, 2009, Cromwell filed an amended complaint.

On March 26, 2010, the defendants renewed their motion to dismiss, asserting, *inter alia*, that Cromwell's suit was barred by the statute of limitations.  The Court ordered briefing from the parties regarding the impact of two cases, *Brenner v. Local 514*, 927 F.2d 1283 (3d Cir. 1991), and *Bullock v. Dressel*, 435 F.3d 294 (3d Cir. 2006), on the applicable statute of limitations.  Following, briefing from both parties, the Court concluded that the applicable statute of limitations was that provided for an action "for any injury to the person or rights of another not arising on contract . . . ." in V.I. CODE ANN. tit. 5, § 31.  In light of the limitations period, the Court determined that the action was timely filed.

*Cromwell v. Int'l Union et al.*
Civil No. 2007-141
Order
Page 4

On March 21, 2011, the defendants filed a motion for summary judgment.

## II.  <u>DISCUSSION</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985).  The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991).  "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

*Cromwell v. Int'l Union et al.*
Civil No. 2007-141
Order
Page 5

trial." *Id.*   In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III.   <u>ANALYSIS</u>

Cromwell's sole claim is that the defendants breached their duty of fair representation to him.  In order to prevail on a breach of duty of fair representation claim, a plaintiff must demonstrate: "'a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'" *Hendricks v. Edgewater Steel Co.*, 898 F.2d 385, 388 (3d Cir. 1990)(quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)).

Cromwell asserts in his complaint that the defendants breached their duty of fair representation in two ways, (1) by failing to timely process his grievance and (2) by failing to pursue his grievance to arbitration.

Cromwell's claim with respect to the defendants' untimeliness centers on the delay in a hearing on his August 2005 suspensions.  In fulfilling its duty to a union member, "a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *Vaca*, 386 U.S. at 191.

In support of their motion for summary judgment, the defendants offer a grievance report filed on August 25, 2005.

(Ex. 3, Statement of Undisputed Facts.) That report indicates that a grievance was filed within eight days of Cromwell's August 17, 2005 suspension.

The defendants assert that there is no evidence that the Union was the source of any adverse effect because of a perceived delay in processing Cromwell's grievance. In support of this assertion, they offer the deposition testimony of Chester Cromwell:

> Q: So are you complaining that the union didn't act quickly enough in maintaining your grievance regarding your suspension as a result of the shirt being untucked?
> A: The union never filed the grievance in the time required.
> Q: You said it was barred because of the statute of limitations or something?
> A: There's certain time to file grievances in different steps.
> Q: Do you have any information indicating that as a result of the delay in filing the grievance by the union, that that stopped the grievance from going forward?
> A. How it works, if the union ain't file on time, the company wins.
> Q. Well, did the company object to your grievance because they said that the union failed to file it on time?
> A. I can't recall right now. I don't have the document before me.

(Cromwell Dep. 55:3-55:20, Sept. 16, 2009.)

The defendants also offer the affidavit of USW staff representative, Randolph Allen ("Allen"). Allen states that "Cromwell received the same treatment that any other union member would have received under the same circumstances." (Aff. of Randolph Allen ¶ 9.)

*Cromwell v. Int'l Union et al.*
Civil No. 2007-141
Order
Page 7

In light of this evidence, the Court finds that the defendants have met their initial summary judgment burden of showing that they did not breach their duty of fair representation to Cromwell.  The burden of persuasion thus shifts to Cromwell to show the existence of some genuine issue of material fact.

Cromwell failed to present any evidence illustrating that any delay in the processing of his grievances was the result of actions taken arbitrarily, in bad faith, or for a discriminatory purpose.  At most, Cromwell's deposition testimony suggests that grievances were untimely filed.  Significantly, standing alone, negligence cannot sustain a claim of a breach of a duty of fair representation.

Indeed, in *Ahmad v. United Parcel Serv.,* 281 Fed. Appx. 102 (3d Cir. 2008), the Court of Appeals for the Third Circuit addressed a claim by the plaintiff, a union member, that his union failed to timely file an appeal as part of the prosecution of his grievance against his employer, the United Parcel Service. In affirming the district court's grant of summary judgment in favor of the Union, the *Ahmad* Court noted that "mere negligence is not enough to support a claim of unfair representation." *Ahmad v. United Parcel Serv.,* 281 Fed. Appx. 102, 104 (3d Cir. 2008)(unreported).  The Court concluded that "because Ahmad

*Cromwell v. Int'l Union et al.*
Civil No. 2007-141
Order
Page 8

offered no evidence that [his Union representative] acted arbitrarily, in a discriminatory manner, or in bad faith, there was no breach of the duty of fair representation." *Id.* Cromwell finds himself in a no more favorable position than the plaintiff in *Ahmad.* The conclusion can be no different. As such, his claim in this respect is unavailing.

The Court next considers Cromwell's claim that the Union breached its duty by failing to take his grievances to arbitration. The Supreme Court has made plain that an employee does not possess an "absolute right to have [a] grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." *Vaca v. Sipes*, 386 U.S. 171, 191 (1967). Consistent with that principle, the Court has stated that "a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration." *Id.* A breach of the duty of fair representation "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190.

The defendants point to evidence of Local 8713's efforts to represent Cromwell at a January 13, 2006, hearing regarding his January 3, 2006, ten-day suspension. Information about the

*Cromwell v. Int'l Union et al.*
Civil No. 2007-141
Order
Page 9

August 2005 suspensions was also considered at that hearing.

(Allen Aff. ¶ 4.)

In his affidavit, Allen details the actions he and Local

8713 members undertook to represent Cromwell at that hearing:

> 5. Before the January 13th, 2006 hearing, I, Local 8713
> President Juanita Rabsatt, and Local 8713 Shop Steward,
> Orville Crosley, investigated Innovative's claims of
> insubordination against Cromwell and interviewed
> Cromwell and Innovative personnel with respect to those
> claims.  At that hearing, I cross examined Innovative's
> witnesses, called Cromwell, as a witness in his
> defense, and argued that the suspension be rescinded
> and Cromwell be made whole.

(*Id.* ¶ 5.)  At the conclusion of the hearing, Innovative refused

to rescind his January 3, 2006 suspension. (*Id.* ¶ 6.)

In a letter dated January 31, 2006, Allen wrote to Cromwell,

explicating the reasons the Union was not proceeding to

arbitration with the suspension pending investigation grievance.

Allen stated that "[a]fter hearing the testimony of your manager

and supervisor and also your response to these charges, it is

clear that we would not be able to win your grievance had we

continue [sic] to arbitration." (Ex. 6, Statement of Undisputed

Facts.)  Allen then thoroughly outlined Innovative's charges

against Cromwell, among them that (1) Cromwell took a company

vehicle off company premises for personal use, without the

permission of his supervisor, (2) refused to answer questions

*Cromwell v. Int'l Union et al.*
Civil No. 2007-141
Order
Page 10

from his supervisor about work matters, (3) refused to comply

with the company's time recording procedures, (4) failed to

properly wear the company uniform, and (5) refused to respond to

telephone calls from his supervisor, and then refused to answer

questions about why he was not responsive.  Allen averred that

Cromwell was without a supportable defense against these charges.

Specifically, Allen noted that Cromwell had admitted to the

actions that formed the basis of Innovative's charges.

The evidence presented by the defendants demonstrates that

the Union considered the merits of Cromwell's claims, and operated

within their discretion by declining to take his grievances to

arbitration.  Based on this evidence, the Court finds that the

defendants have met their initial summary judgment burden.  The

burden of persuasion thus shifts to Cromwell to show the existence

of some genuine issue of material fact.

Cromwell argues that there was no specific policy requiring

that Innovative employees who worked outside of a company plant

have their shirts tucked while on the job.  He suggests that it

was arbitrary for the Union not to arbitrate the propriety of

suspensions, stemming from, what he claims was an unannounced

policy.  In support of this understanding, he offers a document

*Cromwell v. Int'l Union et al.*
Civil No. 2007-141
Order
Page 11

captioned "iCC Personnel Policies and Procedures[1]." That document states that "[e]mployees engaged in work that puts them in a position where they meet the public are expected to present a neat appearance to customers." (Ex. 7, Pl. Cromwell's Reply to Def.'s Mot. for Summ. J.) Cromwell's position is one of disagreement with the Union's interpretation of an Innovative policy. He fails to offer evidence that the Union's interpretation was patently unreasonable or reflective of discrimination or bad faith. Without such evidence, his contrary interpretation is not sufficient to establish that the Union's behavior amounted to a breach of its duty to him.

Cromwell also argues that the Union failed to properly prosecute his grievance, because he contends the behavior for which he was suspended, was merely a response to inappropriate treatment from his supervisor. Cromwell asserts that on the dates of his August 11, 2005, and August 17, 2005, suspensions, his supervisor addressed him, by saying, "2971[2][]tuck you [sic] shirt in."(Cromwell Aff. ¶¶ 7-8.) Cromwell asserts that he refused "to answer a white supervisor who chooses to call me not by a name but

---

[1] The document Cromwell provides does not state the relationship between Innovative and the iCC entity. However, Cromwell relies on this document as setting forth the dress code for Innovative employees.

[2] 2971 appears to be Cromwell's employee identification number. *See* (Ex. 3, Statement of Undisputed Facts.)

*Cromwell v. Int'l Union et al.*
Civil No. 2007-141
Order
Page 12

instead by a number like a slave as they did my ancestors for they were property of white owners[.]" (*Id.*) In December 2005, Cromwell failed to respond to a work-related question from his supervisor, and according to Innovative, responded to such question by saying "Listen white man I told you when I work Saturday, you don't pay me." (Ex. 2, Statement of Undisputed Facts.) Finding this behavior insubordinate, on January 3, 2006, Innovative suspended Cromwell for ten days. Such events bear on possible discrimination in the employer-employee relationship. A bad employer-employee relationship, even unfriendly, is not necessarily evidence of the *Union's* bad faith or arbitrary or discriminatory treatment. Cromwell has failed to show that any bias emanating from his relationship with Innovative, influenced the Union's handling of his grievances. As such, the Court finds that the defendants are entitled to summary judgment on Cromwell's breach of duty of fair representation claim.

## IV. <u>CONCLUSION</u>

The premises considered, it is hereby

**ORDERED** that the defendants' motion for summary judgment is **GRANTED**; it is further

*Cromwell v. Int'l Union et al.*
Civil No. 2007-141
Order
Page 13


      **ORDERED** that the trial setting is **VACATED;** and it is further

      **ORDERED** that the Clerk of the Court shall **CLOSE** this case.


           S\_____
                **CURTIS V. GÓMEZ**
                  **Chief Judge**